UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUZANNE TROPE,

    Plaintiff,

v.                                                                                              CASE NO. 8:14-cv-2712-T-MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Plaintiff alleges she became disabled on January 1, 2005. (Tr. 26, 164.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on October 23, 2012, at which Plaintiff was represented by an attorney. (Tr. 41-67.) The ALJ found Plaintiff not disabled from January 1, 2005 through December 10, 2012, the date of the decision.[2] (Tr. 26-35.)

In reaching the decision, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, transient tic disorder, sleep apnea, high blood

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 15, 17.)

[2] Plaintiff had to establish disability on or before December 31, 2015, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 26.)

pressure, and diabetes. (Tr. 28.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. 30.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from January 1, 2005 through December 10, 2012. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

**I.     Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th

Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

When a claimant seeks to establish disability through her own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id*.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that her "pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain," pursuant to 20 C.F.R. § 404.1529 "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; *see also* SSR 96-7p (stating that after the ALJ finds a medically determinable

impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities").

When a claimant's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p.

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.[3] The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Id.*

---

[3] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures used to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.

"[C]redibility determinations are the province of the ALJ," *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court," *Foote*, 67 F.3d at 1562.

## II.   Discussion

Plaintiff raises one issue on appeal, namely, that the ALJ erred in his evaluation of Plaintiff's subjective complaints of uncontrollable tics and hypersomnia.  Plaintiff contends that although the ALJ found that her transient tic disorder and sleep apnea were severe impairments, the ALJ did not explain how these impairments would impact Plaintiff's ability to perform work-related activities, except finding that Plaintiff could not tolerate exposure to dangerous machinery or perform jobs that require driving.  Plaintiff argues that the case should be remanded for the ALJ to address whether, and to what extent, Plaintiff's eye twitching and tics would cause her to be off task, and to address her complaints of daytime somnolence and the need to take naps during the day.

The ALJ found that Plaintiff had the RFC to perform light work with the following additional limitations:

> [T]he claimant is not able to climb ladders, ropes, or scaffolds; the claimant is not able to tolerate exposure to dangerous machinery; the claimant is not able to tolerate exposure to hot or cold environments; the claimant is not able to perform jobs that require driving; and the claimant is able to perform work only [on] flat level ground that does not require use of foot pedals.

(Tr. 30.)

The ALJ addressed Plaintiff's relevant testimony at the hearing as follows:

> This twitching starts in her neck and travels into other parts of her body, particularly on her left hand side. Some neurologists, she testified, say that her symptoms suggest Tourette's syndrome. For about 50% of [the] day, she says she experiences this twitching. . . . In addition to this anxiety and twitching, the claimant testified that she tried to use a CPAP machine, but her twitching and fibromyalgia got in the way of using a CPAP machine. . . . During the day, she says she takes one to two naps.

(Tr. 31.)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her symptoms, but her statements about the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (*Id.*) The ALJ explained:

> At the outset, the undersigned notes that the claimant did not allege any specific restrictions on walking, standing, sitting, lifting, pushing or pulling, nor did she allege any specific postural or environmental limitations. While the claimant did not allege any specific limitations in these areas, the undersigned finds that the record does establish that the claimant experiences tics, particularly on the left side. For example, the treatment record on June 23, 2010, mentions a "tic disorder" (Exhibit 3F). The claimant also complained of a "nervous twitch" when Dr. Shefsky examined the claimant on March 15, 2011 (Exhibit 6F). However, he also observed that the claimant walked with a normal gait; could squat full; could walk on heels and toes; and needed no help changing for the exam or getting on and off the exam table. In short, the claimant does not appear to suffer from major restrictions in walking, standing, sitting, lifting, or performing postural activities. To accommodate the effects of her tics and issues down the left side of her body, the undersigned finds that the claimant should not perform work that involves climbing ladders, ropes, or scaffolds, driving, or exposure to hazardous machinery and

>unprotected heights. . . .
>In sum, the above [RFC] assessment is supported by the claimant's partially credible testimony; the undersigned's observations; a thorough review of the treatment record; the observations and findings contained in the consultative examination reports of Doctors Shefsky and Appenfeldt; and the medical opinions of Doctors Ponterio, Levasseur, Bauer, and Appenfeldt.

(Tr. 32-33.)

The Court finds that the ALJ properly considered the totality of the evidence, including Plaintiff's subjective complaints, in determining Plaintiff's RFC and his assessment is supported by substantial evidence.  Contrary to Plaintiff's argument, the ALJ took into consideration her tics and twitching by limiting her to work that did not involve climbing ladders, ropes, or scaffolds, driving, or exposure to hazardous machinery and unprotected heights.  (Tr. 32.)  Although Plaintiff testified that she had tics or eye twitching 50% of the day, she also testified that such things would only slow her a little, not much, and she would try to ignore them and continue working.  (Tr. 62-63.)  As the ALJ properly observed, Plaintiff did not allege any specific restriction on her ability to work as a result of this or any other impairment.  (Tr. 32.)  Also, the medical records documenting Plaintiff's tic disorder do not indicate that this impairment warranted any greater limitations than assessed by the ALJ.  (*See* Tr. 339-40, 342, 346-47, 377, 379.)  Therefore, the ALJ's evaluation of Plaintiff's tics and twitching is supported by substantial evidence.

Further, with respect to her sleep apnea, Plaintiff testified that she

experienced fatigue and took one or two (sometimes more) naps per day. (Tr. 63-64.) The ALJ acknowledged this testimony, but, after noting that Plaintiff did not allege any specific restriction on her ability to work as a result of this or any other impairment, the ALJ apparently discredited it. (Tr. 31.) Although the ALJ could have been more specific in his credibility analysis, any error in this respect is harmless.[4] The ALJ decision is supported by substantial evidence because despite Plaintiff's complaints, the medical evidence of record does not support that Plaintiff's sleep apnea warranted any greater limitations than assessed by the ALJ. (*See, e.g.*, Tr. 316 ("Sleep is sometimes disrupted but generally good."), Tr. 337 (stating that insomnia is well-controlled with medication); *but see* Tr. 323 ("Sleep is interrupted because she has not been able to use C-Pap due [to] an upper respiratory infection and she admits this could be contributing to her daytime fatigue.").) Therefore, the Commissioner's decision is due to be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

---

[4] The Eleventh Circuit has recognized the applicability of the doctrine of harmless error in the context of social security cases. *See, e.g.*, *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. Nov. 3, 2005) (per curiam).

**DONE AND ORDERED** at Jacksonville, Florida, on January 8, 2016.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record